## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2017, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.A.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

December 20, 2017

Court of Appeals Case No.
49A02-1707-JV-1495

Appeal from the
Marion Superior Court

The Honorable
Marilyn A. Moores, Judge
The Honorable
Geoffrey A. Gaither, Magistrate

Trial Court Cause No.
49D09-1612-JD-1915

**Kirsch, Judge.**

[1] D.A. was adjudicated a delinquent for committing an act which, if committed by an adult, would constitute Level 5 felony battery resulting in serious bodily injury.[1] He appeals, contending that the evidence was insufficient to establish serious bodily injury.

[2] We affirm.

## Facts and Procedural History

[3] In 2016, D.A. and his younger brother, T.W., lived with their mother and other family members in an apartment in Marion County, Indiana. A.C., the victim in this case, lived in the same apartment complex. A.C. and T.W. went to Perry Meridian Middle School, and D.A. attended Perry Meridian High School. On November 16, 2016, the three boys were on the school bus coming home from school; T.W. was seated directly behind A.C. According to A.C., T.W. pulled at A.C.'s backpack and kicked at A.C.'s shoes approximately twenty times, which A.C. found "annoying." *Tr. Vol. II* at 10. A.C. told him repeatedly to stop it and, at one point, had the bus driver speak to T.W. about it.

[4] A.C., D.A., T.W., along with some other kids, exited the bus together at their usual stop. T.W. tried to talk to A.C. and say that "he was just horse playing" on the bus, but A.C. told him that it "really wasn't" horseplay, because T.W.

---

[1] *See* Ind. Code § 35-42-2-1.

would not stop when A.C. asked him to do so. *Id*. at 12. Sometime after that, D.A., who was walking directly behind A.C., shoved A.C., and he stumbled and fell. D.A. picked up A.C., lifted him over his shoulder, and "slammed" A.C. to the ground. *Id*. at 14, 49-50, 62. Part of A.C.'s body hit the concrete. A.C. heard D.A. say, "[D]on't f with my brother[,]" which A.C. considered "a subtle threat." *Id*. at 15, 30. T.W. and another boy helped A.C. to his feet and walked him home, with each of them holding one of A.C.'s arms to support him. A.C. was in pain, was crying, and his jaw was moving uncontrollably.

[5] When he got inside his apartment, A.C. sat on the couch, still crying. His mother ("Mother") came home five or ten minutes later and found him holding his side and crying. She went to the area of the apartment complex where she believed D.A. lived, and she encountered him in an exterior area and told him that he had hurt her son. According to Mother, D.A. replied, that A.C. "shouldn't have been talking the 'S' word." *Id*. at 36. Believing his arm was broken, Mother took A.C. to the emergency room, and she called the police who responded and made a report.

[6] Two days after the incident occurred, A.C. underwent surgery to repair his clavicle. The surgery required an implant with seven screws. For the pain, A.C. was prescribed, and took, an advanced Tylenol product for a few days. He missed two weeks of school as a result of the injury, and he wore a sling for approximately three months. The day after the incident, D.A., along with his mother and T.W., went to A.C.'s home and apologized.

On December 12, 2016, the State filed a delinquency petition alleging that D.A. committed battery resulting in serious bodily injury, a Level 5 felony if committed by an adult, and criminal mischief, a Class B misdemeanor if committed by an adult, but the State later dismissed the criminal mischief charge. *Tr. Vol. II* at 4; *Appellant's Appendix Vol. II* at 21. In May 2017, the juvenile court conducted a fact-finding hearing.

At the hearing, A.C. testified and described that he landed "face first" and that his right arm and his nose were in pain. *Tr. Vol. II* at 15. He said that he was in so much pain that he could not walk on his own and needed the other boys' help "to stagger home[,]" and, due to the pain, he was barely able to talk to his mother when she arrived home. *Id*. at 17. A.C. stated that D.A. came over the following day and apologized, telling A.C., "I never would've done it . . . if I knew you were autistic." *Id*. at 32. Mother also testified that D.A., T.W., and their mother came to A.C.'s home to apologize and that D.A. said that he was sorry and "would have never messed with him" if he had known that A.C. "had problems." *Id*. at 41. Mother stated that A.C. "did recover after a few months pretty well" and was "pretty much back to normal" as of the fact-finding hearing. *Id*. at 40.

The defense called as witnesses T.W. and D.A. T.W. acknowledged that, while on the bus, he was tapping A.C. on his head and tugging at his backpack and described that, after they all got off the bus and were walking home, A.C. called him "[f]at ass." *Id*. at 48. T.W. recalled that D.A. began "sticking up for" T.W. and that A.C. said to D.A. in reply, "[W]hat are you going to do about

it[,]" and he balled up his fist and shoved D.A. *Id*. at 48-49. T.W. said that it was after this exchange of words that D.A. picked up A.C. and dropped him in the grass. T.W. and his friend ran over to check on A.C. "to make sure he was okay" and walked him home. *Id*. at 50. On cross-examination, T.W. acknowledged that, the day after the incident happened, he gave a statement to an administrator at school and did not mention anything about A.C. calling him names or shoving D.A., but explained that he did not believe at the time that he needed to provide a lot of detail.

[10] D.A. testified that, after they got off the bus, he heard A.C. call T.W. "a fat ass[,]" which made D.A. mad. *Id*. at 58. According to D.A., he told A.C., "[D]on't call my brother that[,]" and A.C. replied, "[C]ome do something[,]" and then A.C. balled up his fist at his side and shoved D.A. *Id*. at 58-59. D.A. said that at that point he grabbed A.C.'s arm, picked him up, and dropped him. He said that when he later learned that he had hurt A.C., he felt "sad because I wasn't intending to hurt him" and had only meant to scare him. *Id*. at 61.

[11] During his testimony, A.C. denied that he balled his fist at D.A. or said anything to D.A., and he testified that he did not call T.W. a fat ass, stating that he did not cuss, does not cuss, and "will never cuss." *Id*. at 27. Mother also testified that A.C. "does not curse[,]" even sometimes. *Id*. at 43.

[12] Following the presentation of evidence, the juvenile court entered a true finding of battery resulting in serious bodily injury, and, in June 2017, the juvenile court held a dispositional hearing. *Appellant's App. Vol. II* at 13, 112-13. At the

hearing, D.A. asked the juvenile court to reconsider the true finding for battery as a Level 5 felony and instead enter a true finding as a misdemeanor. *Id*. at 12; *Tr. Vol. II* at 80-81. The State argued, among other things, "The child who was injured had to have surgery that required installation of hardware in his collar bone . . . . [T]his did a lot of damage." *Tr. Vol. II* at 79. The court retained its earlier true finding of battery resulting in serious bodily injury, placed D.A. on probation, and discharged him to his grandfather's care.[2] D.A. now appeals.

## Discussion and Decision

[13] D.A. does not dispute that A.C. was injured as a result of his actions; at issue "is whether A.C.'s injuries rose to the level of serious bodily injury." *Reply Br*. at 4. He maintains that the evidence was not sufficient to support a true finding of battery resulting in serious bodily injury. When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *M.T.V. v. State*, 66 N.E.3d 960, 965 (Ind. Ct. App. 2016), *trans. denied*. Upon review of a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment. *Id.* We will neither reweigh the evidence nor judge witness credibility. *Id.* If there is substantial evidence of probative value from which a reasonable trier of

---

[2] The juvenile court ordered D.A. to complete an apology letter to the victim and continue attending grief counseling as arranged by his grandparents; as to the latter, the record reflects that D.A.'s mother passed away while the case was pending. *Tr. Vol. II* at 74-75.

fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

[14] The State's petition alleged as follows:

> On or about the 16th day of November, 2016, said child did knowingly or intentionally touch [A.C.] in a rude, insolent or angry manner, which resulted in serious bodily injury, to Wit: a broken collar bone which required surgery & the placement of seven (7) screws to repair, plus ongoing physical therapy.

*Appellant's App. Vol. II* at 21. Indiana Code section 35-31.5-2-292 defines serious bodily injury to mean bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus. "Protracted" means to "draw out or lengthen in time," and "impairment" means "the fact or state of being damaged, weakened, or diminished." *Mann v. State*, 895 N.E.2d 119, 122 (Ind. Ct. App. 2008).

[15] Here, D.A. maintains that the State presented evidence sufficient to support only "either bodily injury or moderate bodily injury" and that the juvenile court should have entered a true finding for either battery as a Class A misdemeanor or battery as a Level 6 felony if committed by an adult. *Appellant's Br.* at 9. He highlights that it was one act, namely picking up A.C. and throwing him to the ground, as opposed to multiple acts, and that A.C.'s mother testified at the May 2017 fact-finding hearing that A.C. was for the most part back to normal. He

urges that "A.C.'s injury did not rise to the level of a serious bodily injury." *Id.* at 13. We disagree.

[16] As D.A. acknowledges, "There is no bright line rule that differentiates bodily injury from serious bodily injury[,]" and "[w]hether the bodily injury is serious is a question of degree that is reserved for the fact-finder." *Appellant's Br.* at 11 (citing *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004) and *Whitlow v. State*, 901 N.E.2d 659, 661 (Ind. Ct. App. 2009)). Here, the State presented evidence that D.A. picked up A.C. over his shoulder and "slammed" him to the ground, and that, in part, he landed on concrete, "face first." *Tr. Vol. II* at 14-15. Due to the pain, A.C. was unable to walk on his own and was barely able to speak to his mother when she arrived home. Mother described that for a short time A.C. appeared to be in "excruciating" pain. *Id.* at 38. A.C. had surgery to repair his clavicle, which required an implant and seven screws and some pain medication for a few days. He missed two weeks of school and wore a sling for about three months. Our Supreme Court has stated that fact-finders are extended "considerable deference" as to whether a bodily injury is "serious." *Davis*, 803 N.E.2d at 1178. D.A. is essentially asking us to reweigh the evidence, which we cannot do. *M.T.V.*, 66 N.E.3d at 966. The evidence was sufficient to support the juvenile court's true finding that D.A. committed an act that would constitute Level 5 felony battery resulting in serious bodily injury if committed by an adult.

[17] Affirmed.

Bailey, J., and Pyle, J., concur.